[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 14-14081; 14-14088
Non-Argument Calendar
_____

D.C. Docket Nos. 1:12-cr-20123-RNS-1; 1:08-cr-21158-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEL STEINGER,
a.k.a. Joel Steiner,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 11, 2015)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Joel Steinger is serving a total 240-month sentence after pleading guilty to 2 counts of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349.  Steinger's convictions arose from two separate cases, but we have consolidated his appeals because they raise the same issues concerning Steinger's competence to plead guilty.  After careful review, we affirm.

## I.  BACKGROUND

### A.    2008 and 2012 Indictments

In 2008, Steinger was charged with conspiracy to commit mail and wire fraud, in violation of § 1349; substantive mail and wire fraud, in violation of 18 U.S.C. §§ 2, 1341, and 1343; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), all in connection with a scheme to fraudulently sell interests in third parties' life insurance policies (hereinafter, the "2008 case").

In 2012, while Steinger was out on bond awaiting trial, he was indicted in a separate action for conspiracy to commit mail and wire fraud and substantive mail and wire fraud, based on his participation in a scheme to fraudulently obtain health insurance (hereinafter, the "2012 case").

2

In December 2012, after holding multiple status conferences, the district court presiding over Steinger's 2008 case sua sponte scheduled a competency hearing and ordered mental and physical competency evaluations of Steinger.[1]

## B.    2013 Competency Evaluation Report

On May 3, 2013, the district court received a forensic evaluation of Steinger under seal.  Psychiatrist Ralph Newman, M.D., and psychologist Adeirdre Stribling Riley, Ph.D., authored the report describing Steinger's mental and physical condition.  They stated that Steinger was 63 years old and suffered from spinal stenosis, myeloradiculopathy, chronic obstructive pulmonary disease, which required oxygen, benign prostatic hypertrophy, gastro-esophageal reflux disease, polyps on the gallbladder, sleep apnea, insomnia, obesity, and incontinence, and had masses on his parotid glands and needed a catheter to urinate.

Between 1994 and 2009, Steinger had three surgeries for his spinal stenosis. While awaiting trial, Steinger was housed at Larkin Community Hospital ("Larkin"), where physicians recommended that he be evaluated for further surgical intervention.  Steinger, however, refused to have any operation at Larkin, and requested instead that he be transferred to the University of Miami Hospital ("UMH") for the recommended evaluation.

---

[1] Steinger raised competency concerns in his 2012 case.  The parties ultimately agreed that the results of the competency hearing in the 2008 case would be binding on both cases. Consequently, all of the proceedings relevant to Steinger's competency and the appeals before us occurred in the 2008 case.

Steinger relied on a battery of drugs to control his pain. He used a fentanyl patch and took venlafaxine, ozcarbazepine, ibuprofen, acetaminophen, methadone, and morphine. He also took Ativan for anxiety, in addition to other miscellaneous medications for his gastrointestinal and prostate ailments. Steinger rated his pain as ten out of ten.

As to Steinger's mental health, Dr. Newman and Dr. Stribling Riley concluded:

> [A]lert and oriented to person, place, time, and situation. His memory is intact for immediate, recent, and remote recall to include details of the alleged offense . . . . Thought processes are well-organized without a thought disorder. He denies delusions or hallucinations. He is somatically preoccupied with his pain and discomfort, which appears to be genuine, although pain is subjective.

They noted that Steinger was "more depressed than the average person" but "less depressed than the average pain patient." His anxiety was average when compared to the general community but "considerably below average for pain patients."

Overall, the doctor examiners determined that Steigner was competent to stand trial. They opined that Steigner did not suffer from a severe mental disease or defect, and that he understood the charges against him and the possible penalties and benefits associated with pleading guilty. Steinger could assist counsel in his defense, and his medication regimen did not impede his ability to do so or to understand the proceedings. Finally, the doctors documented some malingering,

4

noting that Steigner sought to "portray himself with a severe physical disability which would limit his ability to participate in . . . legal activities."

## C.    May 2013 Competency Hearing

After receiving the report, the district court held a competency hearing on May 29, 2013.  Dr. Newman testified that: (1) there was "no doubt in [his] mind" that Steinger had the mental competency to undergo trial and assist in his defense; (2) Steinger's medications were "not particularly cognitively impairing" in their current doses; and (3) pain is subjective and can be easily exaggerated, and it was suspicious if a person claiming extreme pain refused a surgery that could provide relief.

Dr. Stribling Riley testified that Steinger was competent to stand trial. Steinger was on medication when she examined him and he was still able to complete 1 hour and 15 minutes' worth of psychological tests and give coherent and rational responses to the questions.  Dr. Stribling Riley observed that it was "remarkable, given the length of testing, that there were no complaints of pain or observable signs of pain."  She waited about 15 minutes after he took his medication to begin the tests because she was concerned that he could be distracted by his pain or temporarily sedated by the medication.  She observed that Steinger had the wherewithal to be aware of his pain and request medication when he needed it.

Steinger addressed the district court and stated that he was in such pain that he screamed and cried all the time. He said it was "common sense" that morphine affected his ability to concentrate and that, without the morphine, he was in such pain that he could not focus. Steinger explained that "[t]his all could be solved" if he received a spinal surgery at a hospital that was better equipped to handle the risky procedure and subsequent physical therapy than Larkin. He suggested UMH, and explained that he had previously declined the operation because he did not have faith in his Larkin doctors' abilities.

The district court found that Steinger was competent to stand trial. It determined that he did not have a serious mental disease or defect and that his medication was not affecting his ability to assist his attorneys. The district court stated that it would continue to monitor Steinger's health and medication regimen during the months leading up to trial.

### D.    September 2013 Status Conference

On September 9, 2013, the district court conducted a status conference, in which Steinger spoke at length about his health and requested a continuance. He stated that his medical condition had changed rapidly over the intervening months and he could not stand the pain any longer. He was past taking morphine and now required heavier drugs, which still did not give him relief. Steinger described himself as "a walking dope man" and said that he did not "even know what's going

6

on half the time." Steinger's counsel also stated that Steinger was preoccupied by his health during attorney-client interviews. Counsel requested a continuance because Steinger had a surgical consult scheduled at UMH and the surgery could alleviate Steinger's pain. The district court severed Steinger's case from his co-conspirators' cases and ordered a continuance.

### E.    December 2013 Status Conference

The parties met for another status conference on December 19, 2013. UMH personnel related to the district court that Steinger had a surgical consult on September 19, 2013, and the neurosurgeon scheduled Steinger's surgery for the next day. Steinger, however, refused the surgery on September 20, and refused the surgery on two more occasions. Eventually, UMH discharged Steinger because the surgery was not going to occur. Steinger's surgeon stated that the procedure would likely have a worse outcome now that Steinger delayed it.

Steinger testified that he refused to have surgery on September 20 because he had not met the surgeon and no one had explained the procedure to him or told him about the rehabilitation process. He denied refusing the surgery on the second date that it was scheduled. Steinger stated that, on that occasion, he simply wanted to speak to the surgeon about arrangements for his rehabilitation before consenting to the procedure. After the second attempted surgery, Steinger learned for the first time that he needed work on multiple areas of his spine. He was surprised to hear

that.  He also learned that pre-surgical testing revealed that he had suffered a heart attack at an unknown time.  He returned to Larkin to make arrangements and think things over in light of the new information, and his pain continued to worsen.

Steinger told the district court that he still wanted the surgery but only if satisfactory arrangements for his rehabilitation could be made.  Steinger's treating physician at Larkin testified that, despite the pain since his return from UMH, Steinger had a good memory and was "with it 100 percent."  The district court scheduled the trial to begin in April 2014 regardless of whether Steinger had the operation.

## F.    March 2014 Plea

But in March 2014, Steinger accepted a plea agreement for both cases.  At the consolidated change-of-plea hearing, Steinger testified that he was taking Dilaudid for his back pain, which was stronger than morphine.  He also took OxyContin and Ativan prior to the hearing.  The district court asked him whether he could think clearly and understand what was happening, and Steinger replied that he could.

Steinger then signed the plea agreement and stated that he understood the factual proffer, terms, conditions, maximum statutory sentence, the method in which his sentence would be calculated under the Sentencing Guidelines, and the rights that he was giving up by pleading guilty.  No one had coerced him into

8

entering the plea or made any promises.  Steinger explained that he had talked with his attorney about his case and his decision to plead guilty.  Finally, the district court discussed Steinger's sentence appeal waiver and Steinger did not express any misunderstandings or concerns.

The district court accepted Steinger's guilty plea and determined that he was "fully competent and capable of entering an informed plea."  The court stated that, due to Steinger's health issues, it had paid particular attention to his answers and "condition" in reaching this conclusion.

## G.    August 2014 Sentencing

At a consolidated sentencing hearing that August, the district court sentenced Steinger to concurrent 239-month sentences in both the 2008 and 2012 cases, and imposed a consecutive 1-month sentence under 18 U.S.C. § 3147 because Steinger committed the 2012 offense while he was on bond from the 2008 offense.  Steinger now appeals his convictions.

## II.  GUILTY PLEA AND APPEAL WAIVER

## A.    Legal Principles

Because Steinger did not object to the district court's determination that he was competent to enter a guilty plea, our review is for plain error only.[2]  United States v. Rodriguez, 751 F.3d 1244, 1251 (11th Cir.), cert. denied, 135 S. Ct. 310

---

[2] A defendant's sentence appeal waiver cannot bar his claim that he was incompetent to plead guilty.  United States v. Wingo, 789 F.3d 1226, 1234 n.8 (11th Cir. 2015).

(2014).  "To establish plain error, a defendant must show that there is (1) error, (2) that is plain, and (3) affects substantial rights."  Id. (quotations omitted).  In addition, in the context of guilty pleas, the defendant must show that, but for the error, there was a reasonable probability that he would not have entered the plea. Id. at 1252.

Defendants have a fundamental right under the Due Process Clause not to be convicted while incompetent.  United States v. Wingo, 789 F.3d 1226, 1235 (11th Cir. 2015).  Thus, a defendant's guilty plea, and any corresponding waiver of his appellate rights, is not valid if the defendant was incompetent at the time of the plea.  See id.  A defendant is competent to enter a guilty plea only when he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."  Rodriguez, 751 F.3d at 1252 (quotation marks omitted).

Federal Rule of Criminal Procedure 11 safeguards a defendant's right not to plead guilty while incompetent by requiring the district court to "conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." United States v. Hernandez-Fraire, 208 F.3d 945, 949 (11th Cir. 2000).  The court must address three core concerns: (1) whether the plea is free from coercion; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant knows and understands the consequences of his plea.  Id.

10

A similar inquiry is required in order for a sentence appeal waiver to be enforceable. The record must make clear that the defendant "understood the full significance of the waiver," or that "the district court specifically questioned the defendant about the waiver" during the plea colloquy. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).

**B.    Discussion**

The record evidence establishes that the district court did not err, plainly or otherwise, by accepting Steinger's guilty plea. In May 2013, about ten months before Steigner pled guilty, two mental health professionals evaluated him and agreed that he could understand the charges against him and participate in his own defense. They concluded that Steinger's medications did not impede his cognitive abilities and he was competent to stand trial.

Specifically, the medical experts found that Steinger was alert and oriented and was able to give coherent responses to questions. Accordingly, at this juncture, there was no evidence that Steinger was incompetent. See Rodriguez, 751 F.3d at 1252.

While Steinger contends that his health deteriorated between May 2013 and March 2014, causing him to become incompetent, the record does not support his contention. Steinger spoke at two status conferences before pleading guilty in March 2014, and he provided lucid and pointed commentary about his health on

11

each occasion.  He also presented seemingly rational reasons for delaying his spinal surgery at UMH; although, based on Dr. Newman's and Dr. Stribling Riley's suggestion that Steinger was malingering, it was reasonable to believe that he was delaying the surgery to manipulate his legal proceedings.  Furthermore, while it appears that Steinger began taking stronger pain medications at some time before the December 2013 status conference, there was no indication that Steinger was unable to focus during the proceedings, and his treating physician testified that he was "with it 100 percent."

Similarly, at the change-of-plea hearing in March 2014, Steinger acted appropriately and stated that he was thinking clearly, could understand what was happening, and understood his plea agreement and the factual proffer.  There is no doubt that Steinger suffered from serious physical health conditions and was taking a number of medications to control his pain, but Steinger's own admissions and behavior throughout his two cases showed that his cognitive abilities remained intact.  At the worst, Steinger was distracted and anxious because of his health conditions and 26-month hospitalization, but there was no indication that he failed to appreciate the proceedings against him or assist his attorneys in preparing a defense.  See id.  Rather, the record of the proceedings showed that Steinger consistently was alert, articulate, and attentive to the factual basis of the

12

proceedings and had the ability to consult with his counsel.[3]  See id.  Therefore, the district court did not err by determining that Steinger was competent to enter a guilty plea.

Finally, to the extent that Steinger seeks to invalidate his guilty plea or sentence appeal waiver for reasons other than his competency, his arguments fail.  At the change-of-plea hearing, the district court confirmed that Steinger understood the nature of the charges against him and the consequences of pleading guilty.  See Fed. R. Crim. P. 11; Hernandez-Fraire, 208 F.3d at 949.  Steinger further agreed that no one coerced him into entering his plea.  See Fed. R. Crim. P. 11; Hernandez-Fraire, 208 F.3d at 949.  Likewise, the district court questioned Steinger about the provisions of the sentence appeal waiver and Steinger did not express any misunderstandings.  See Johnson, 541 F.3d at 1066.  Steinger's plea agreement and sentence appeal waiver are both valid and enforceable.

### III.  SECOND COMPETENCY HEARING

**A.    Legal Principles**

Whether a defendant is competent is an ongoing inquiry, and the defendant must be competent at all stages of trial.  Drope v. Missouri, 420 U.S. 162, 181, 95

---

[3] We also note that Steinger's attorney, who had been attentive to Steinger's physical and mental health needs throughout the two cases, did not raise concerns about Steinger's competency at the change-of-plea hearing.  While this is not dispositive, it is further evidence that Steinger's competency was not in doubt.  See Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996).

S. Ct. 896, 908 (1975).  Pursuant to 18 U.S.C. § 4241(a), when there is "reasonable cause to believe that the defendant may presently be [incompetent]," the district court must order a competency hearing sua sponte.  18 U.S.C. § 4241(a).  The "reasonable cause" standard is satisfied when there is a "bona fide doubt regarding the defendant's competence."  See Wingo, 789 F.3d at 1236 (quotation marks omitted).

This Court has identified three factors to consider when determining whether there was a bona fide doubt about the defendant's competence: "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial."  Id. (quotation marks omitted).  The district court "must consider the aggregate of evidence pertaining to all three prongs and not evaluate each prong in a vacuum." Id.

While we normally review issues not raised below for plain error, the abuse-of-discretion standard always applies when reviewing a district court's failure to sua sponte order a competency hearing.  See id. at 1234, 1236 (reviewing a § 4241(a) claim for abuse of discretion despite the fact that no objection was made

14

in the district court); United States v. Williams, 468 F.2d 819, 820 (5th Cir. 1972) (applying the same standard).[4]

## B.    Discussion

The district court did not abuse its discretion by determining that Steinger was competent to plead guilty without ordering a second competency evaluation. Each medical professional who evaluated Steinger concluded that he was competent to stand trial. See Wingo, 789 F.3d at 1236. Furthermore, while Steinger was often agitated and angry during hearings and status conferences, he was attentive to the proceedings, provided meaningful responses to questions, and, during the change-of-plea hearing, explicitly indicated that he was thinking clearly and could understand the significance of his guilty plea. See id. While Steinger now contends that his decision to cancel his spinal surgery was irrational, the record shows that Steinger had concerns about rushing the procedure and receiving inadequate physical therapy. These concerns, and any desire to avoid trial, however, were understandable under the circumstances and did not evidence irrationality. See id.

As Steinger was alert, articulate, and rational during his two cases, and did not have any prior medical diagnoses suggesting he was incompetent, there was no

---

[4] This Court has adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

15

bona fide doubt about his ability to understand the proceedings and participate in his defense.  See id.  Accordingly, the district court did not abuse its discretion by failing to order a second competency hearing sua sponte.  See 18 U.S.C. § 4241(a); Wingo, 789 F.3d at 1236.

In light of all the foregoing, we affirm Steinger's two convictions.

**AFFIRMED.**