[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11918
Non-Argument Calendar

_____

D.C. Docket No. 8:13-cr-00077-SDM-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE PRIMITIVO NUNEZ-SANDOVAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 25, 2014)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Jose Nunez-Sandoval pled guilty to possession and conspiracy to possess

with intent to distribute at least 50 grams of methamphetamine.  For these offenses,

Nunez-Sandoval was sentenced to a total term of 151 months of imprisonment. On appeal, Nunez-Sandoval challenges his sentence on two grounds: (1) the district court clearly erred when it declined to grant him a minor-role reduction pursuant to § 3B1.2(b) of the United States Sentencing Guidelines; and (2) the district court imposed an unreasonable sentence by giving unjustifiable weight to the Sentencing Guidelines. After careful review, we affirm.

## I.

The relevant facts are largely undisputed. Police obtained information indicating that Luis Enrique Esquivel-Mendoza was possibly engaged in illegal activity and was present at a truck stop in Georgia. They went to Esquivel-Mendoza's location and, with his consent, searched his car, finding 999.5 grams of crystal methamphetamine and a .38-caliber revolver. According to Esquivel-Mendoza, he had agreed to transport the methamphetamine from Atlanta, Georgia, to Polk County, Florida, for a man known as "Coyote." Coyote had told him that he would be paid upon arrival.

Esquivel-Mendoza agreed to work with police by completing the shipment in order to apprehend the person who was to receive the methamphetamine in Florida. To that end, he called the phone number that Coyote had provided him. The defendant, Nunez-Sandoval, answered the phone, identified himself as Coyote's brother-in-law, and made plans to meet Esquivel-Mendoza at a restaurant

in Florida.  When they met at the restaurant, Esquivel-Mendoza instructed Nunez-Sandoval to take the methamphetamine from the trunk of the car and put the money in the passenger compartment.  Police officers arrested Nunez-Sandoval soon after he took control of the methamphetamine.  Nunez-Sandoval later admitted that he was supposed to receive the methamphetamine, pay Esquivel-Mendoza, and store the drugs for Coyote.  Esquivel-Mendoza had transported drugs for Coyote several times but had never met Nunez-Sandoval.

## II.

A federal grand jury returned a two-count indictment charging Nunez-Sandoval with possession with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and  (b)(1)(A)(viii), and conspiracy to do so, in violation of 21 U.S.C. § 846.  Nunez-Sandoval pled guilty to both counts without a plea agreement.

Before sentencing, the probation officer prepared Nunez-Sandoval's presentence investigation report ("PSR").  In the PSR, the probation officer determined the base offense level to be 36 and then applied a three-level reduction for acceptance of responsibility, for a total adjusted offense level of 33.  With a criminal history category of II, Nunez-Sandoval's advisory guideline range was 151 to 188 months of imprisonment.  The statutory minimum for both counts was ten years, and the maximum was life.

3

At his sentencing, Nunez-Sandoval argued, consistent with arguments made in a sentencing memorandum, that his role in the conspiracy was minor relative to the other known participants, so he should have received a two-point reduction pursuant to U.S.S.G. § 3B1.2. He contended that, unlike "Coyote," he played no part in the planning or supervision of the conspiracy and, unlike Esquivel-Mendoza, he did not transport the drugs across state lines and was not armed. The court overruled this objection, finding that Nunez-Sandoval had not shown that he was materially less culpable than the average participant or the specific comparators.

Nunez-Sandoval then requested a variance down to the statutory minimum of 120 months based on his history and characteristics—having grown up impoverished in Mexico and having come to the United States to find work—as well as the minimal deterrent effect of a marginally higher sentence. He also asked the district court to consider a recent amendment to the Sentencing Guidelines, which would go into effect in November 2014, that would change the drug-quantity table and reduce by two levels the base offense levels for all drug offenses. If that amendment applied in this case, Nunez-Sandoval asserted, his guideline range would have been 121 to 151 months of incarceration.

The district judge acknowledged that he had the authority to vary downward "in sympathy" with the United States Sentencing Commission's decision to reduce

4

the offense levels for drug offenses. But the judge declined to vary downward based on the Commission's decision because doing so would infringe on the Commission's and Congress's ability to uniformly and systematically address the issue of whether the new drug-quantity table applies retroactively. The judge heard from the government, which requested a sentence of 151 months, and then imposed the low-end sentence of 151 months.

After announcing the sentence, the district judge noted that he had considered the policies and guidelines of the Sentencing Commission, the advisory guideline range, the factors listed in 18 U.S.C. § 3553(a), the sentencing memorandum submitted by the defense, and the arguments of counsel. Regarding the offense, the judge explained that Nunez-Sandoval was convicted of a "serious offense for interstate transportation of a substantial quantity of methamphetamine" and that he "was an operative playing a crucial role." As for Nunez-Sandoval's history and characteristics, the judge noted that Nunez-Sandoval had a prior drug conviction and also explained that while Nunez-Sandoval had grown up in poverty, he also had had the opportunity in the United States to work but had chosen to engage in serious criminal conduct at the behest of Coyote.

The district judge also discussed at length the difficulties in connecting the § 3553(a) factors to a specific sentence. Remarking that he had been critical of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738

5

(2005), on the basis that it presumes that there is some formula to the process of applying the § 3553(a) factors, the judge found it "impossible to make distinctions based upon these aspirational factors [in § 3553(a)]."   Furthermore, the judge stated, "It's impossible to articulate how much sentence equals how much value in any one or all of those factors."   Notwithstanding these concerns, the judge concluded by stating that the 151-month sentence was his "best calculation" at "accomplish[ing] the statutory purposes of sentencing" for this "mainstream offense," and that a sentence at the low end of the guideline range was appropriate and would avoid unwarranted sentencing disparities that may result from prematurely applying the amendment to the Sentencing Guidelines drug-quantity table.   Nevertheless, the judge indicated his willingness to entertain a motion to reduce Nunez-Sandoval's sentence in the future if the drug-offense amendment were determined to be retroactive.  Nunez-Sandoval now appeals his sentence.

## III.

Nunez-Sandoval first contends that the district court clearly erred in refusing to grant him a minor-role reduction because he had no supervisory role or equity interest in the methamphetamine, and his role in the conspiracy was minor compared to that of the other participants.  The determination of a defendant's role in an offense is a question of fact, which we review for clear error. *United States*

*v. Rodriguez De Varon* ("*De Varon*"), 175 F.3d 930, 937-38 (11th Cir. 1999) (*en banc*).

A two-level reduction to the offense level is appropriate if the defendant functions as a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2(b), comment. (n.5). The defendant bears the burden of showing, by a preponderance of the evidence, that he is entitled to the minor-role reduction. *United States v. Rodriguez*, 751 F.3d 1244, 1258 (11th Cir.), *cert. denied*, (U.S. Oct. 6, 2014) (No. 14-5968).

In analyzing whether a minor-role reduction is warranted, a district court must consider two principles: (1) the defendant's role as measured against the conduct for which he has been held accountable; and (2) the defendant's role as compared to other participants in the relevant conduct. *Id.* The first principle recognizes that a minor-role reduction may be appropriate where the defendant is held accountable for conduct more extensive than his specific actions. *De Varon*, 175 F.3d at 940-41. The second principle measures the relative culpability of the defendant in comparison to that of other identifiable participants in the relevant conduct. *Id.* at 944. Simply not being a supervisor or manager does not automatically entitle a defendant to a minor-role reduction. *Rodriguez*, 751 F.3d at 1258. Nor is a defendant automatically entitled to a minor-role reduction for being

7

"somewhat less culpable" than other participants, "since it is possible that none are minor or minimal participants." *De Varon*, 175 F.3d at 944. Instead, the determination is whether the defendant "was less culpable than *most other participants*" in the relevant conduct. *Id.* (emphasis in original).

We conclude that the district court did not err by declining to apply a minor-role reduction. With respect to the first principle, Nunez-Sandoval's behavior was coextensive with the relevant conduct attributed to him. Because of that, he cannot prove that he is entitled to a minor-role reduction "simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." *De Varon*, 175 F.3d at 941. The defendant's role as that of a "traditional drug courier," as he concedes in his brief, does not alter that principle. *Id.* at 942. "[W]hen a drug courier's relevant conduct is limited to [his] own act of [distribution], a district court may legitimately conclude that the courier played an important or essential role in the [distribution] of those drugs." *Id.* at 942-43. Therefore, because the district court held him responsible only for the "substantial quantity" of methamphetamine that he had agreed to distribute, his relevant conduct was sufficient to support the court's denial of the minor-role reduction. *See also id.* at 943 (noting that the amount of drugs is a "material consideration in assessing a defendant's role" in the relevant conduct). This

8

analysis of Nunez-Sandoval's role in the relevant conduct is dispositive of his claim of error under § 3B1.2(b). *See id.* at 945.

In any case, Nunez-Sandoval also has not shown that he was less culpable than most other participants in the crime. The record supports the district court's finding that Nunez-Sandoval's culpability for the relevant conduct was similar to that of Esquivel-Mendoza. Both were essential parties to the transportation and distribution of the methamphetamine, and both were acting pursuant to the directions of Coyote. While Nunez-Sandoval may have been somewhat less culpable than Esquival-Mendoza, in that the defendant did not possess a weapon or travel across state lines, that alone does not automatically entitle him to a minor-role reduction or render the district court's denial of the minor-role reduction clear error. *See id.* at 944.

### III.

Nunez-Sandoval next argues that the district court gave unjustifiable weight to the Sentencing Guidelines, resulting in an unreasonable sentence. He contends that the district judge's comments on *Booker* indicate that the court failed to adequately consider the 18 U.S.C. § 3553(a) factors and instead formulaically applied the Sentencing Guidelines.

We review the reasonableness of a sentence for an abuse of discretion. *United States v. Victor*, 719 F.3d 1288, 1291 (11th Cir. 2013). We first ensure that

the district court committed no significant procedural error, such as treating the guidelines as mandatory or failing to consider the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). If a sentence is procedurally reasonable, we then examine whether the sentence was substantively reasonable. *Id.* The party challenging the sentence bears the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing listed under § 3553(a)(2). In determining the sentence to be imposed, the court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities among defendants with similar records, among other factors. 18 U.S.C. § 3553(a)(1), (6). The weight to be given any particular § 3553(a) factor is a matter left to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). Therefore, we will vacate a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted).

We conclude that the district court committed no procedural error and imposed a substantively reasonable sentence. The court correctly calculated the guideline range and did not treat the guidelines as mandatory. The district judge's statements regarding *Booker* reflect the manifest difficulty of determining how the § 3553(a) factors should affect the sentence. While these comments also reflect an uneasiness with *Booker* and the advisory guideline system, the judge specifically acknowledged that he had the authority to sentence outside the guideline range based on the § 3553(a) factors.

Nor do we find that the judge placed unreasonable weight on the guideline range and thereby imposed a substantively unreasonable sentence. Rather, the transcript of the sentencing hearing reflects that the judge was particularly concerned about the need to avoid unwarranted sentencing disparities among defendants found guilty of similar conduct in light of the changes to the drug-quantity table. As *Gall* explained, "avoidance of unwarranted disparities was clearly considered" when setting the guideline ranges. 552 U.S. at 54, 128 S. Ct at 599. Thus, the court properly considered that factor, among others, by giving careful consideration to the guideline range.

Moreover, the court explicitly noted that it had considered the required sentencing factors and Nunez-Sandoval's arguments at sentencing, and the court discussed Nunez-Sandoval's history and characteristics and the nature and

11

circumstances of the crime. *United States v. Scott*, 426 F.3d 1324, 1329-30 (11th Cir. 2005) (the district court's explicit acknowledgement that it had considered the § 3553(a) factors and the defendant's arguments is sufficient to establish that the court did, in fact, consider them). After considering all of the relevant factors, the court arrived at a sentence at the low end of the guideline range, which we ordinarily expect to be reasonable. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). Under the circumstances, Nunez-Sandoval has not shown that the sentence imposed in this case was substantively unreasonable.

## IV.

In sum, the district court did not clearly err in finding that Nunez-Sandoval was not a "minor participant" in the offenses under U.S.S.G. § 3B1.2(b), and the 151-month sentence imposed was both procedurally and substantively reasonable.

**AFFIRMED.**