[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14365
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-10010-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN MARI LINDOR,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 22, 2015)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jean Mari Lindor appeals his sentence of 286 months of imprisonment following his convictions for 26 counts of mail fraud, 18 U.S.C. § 1341, nine counts of wire fraud, *id.* § 1343, three counts of access device fraud, *id.* § 1029(a)(2), (b)(1), and two counts of aggravated identity theft, *id.* § 1028A(a)(1), (c)(5). Lindor challenges the determination that he intended to cause a loss of more than $7 million by submitting false claims for disaster relief, and he challenges the reasonableness of his sentence. We affirm.

## I. BACKGROUND

Lindor's charges stemmed from his operation of Noula, Inc., which he incorporated as not for profit, but operated as for profit by charging customers $300 to submit fraudulent claims to the Gulf Coast Claims Facility for losses attributable to the Deepwater Horizon oil spill. Investigators traced numerous fraudulent claims to Lindor based on his signature on paperwork and his submission of virtually identical employment verification letters, fabricated paystubs, and hardship statements with his email address. Lindor filed 1,074 fraudulent claims requesting more than $14 million, and the Claims Facility paid $1,994,680. Lindor also filed a personal claim for disaster unemployment relief and submitted an employment verification letter and paystubs representing that he had been employed in 2010, but later Lindor filed an application for naturalization in which he disclosed that his employment had ended in 2009. The paystubs that

2

Lindor submitted with his personal claim were similar to and shared the same sequence of check numbers as the paystubs purportedly issued by different employers to Noula's claimants. Investigators also discovered that Lindor had applied for and collected $13,525 in unemployment benefits by misrepresenting that he had been laid off from his job because of the oil spill.

When arrested, Lindor had two debit cards in his pockets containing tax refunds issued by Turbo Tax to two persons whose social security numbers Lindor used to file fraudulent tax returns for 2012. Investigators also discovered copies of the two fraudulent tax returns on Lindor's computer. An examination of Lindor's bank account revealed that he also had received tax refunds issued to two other persons. The four fraudulent tax returns resulted in a loss of $8,567.

A jury found Lindor guilty of all the crimes charged. Lindor's presentence investigation report classified his 26 counts of mail fraud, 3 counts of wire fraud, and 3 counts of access device fraud as one group related to the false claims submitted to the Claims Facility, and the report classified Lindor's remaining 6 counts of wire fraud as a second group related to his fraudulent claims for unemployment benefits. *See* United States Sentencing Guidelines Manual § 3D1.2 (Nov. 2012). For group one, the report increased Lindor's base offense level by 20 levels for a loss amount between $7 and $20 million, *id.* § 2B1.1(b)(1)(K), and added another two levels because Lindor obstructed justice by testifying falsely

3

that the fraud was committed by a former employee who was an ordained minister and by a cousin who resembled Lindor, despite testimony from Lindor's father that the cousin had not left Haiti in 18 years, *id.* § 3C1.1. For group two, the report increased Lindor's base offense level by 4 levels for a loss amount between $10,000 and $30,000. *Id.* § 2B1.1(b)(1)(C). The two groups had a combined adjusted offense level of 33.

With a criminal history under category I, the report provided an advisory guideline range between 135 and 168 months of imprisonment. The report also provided that Lindor faced a maximum statutory sentence of 20 years for each count of mail fraud and wire fraud, 18 U.S.C. § 1341, and a maximum statutory sentence of 10 years for each count of access device fraud, *id.* § 1029(a)(2), (c)(1)(A)(i). The report excluded Lindor's two convictions for aggravated identity theft from the groupings, U.S.S.G. § 3D1.1(b)(2), and the report provided that Lindor faced a mandatory a two-year sentence for each conviction and that the sentences had to run consecutive to any other term of imprisonment, 18 U.S.C. § 1028A(a)(1), (b)(2).

Lindor objected to the presentence report on three grounds relevant to this appeal. First, he challenged the 20-level increase of his base offense level and argued that he did not cause any loss because he was innocent and, alternatively, that the loss amount was less than $2 million. Second, Lindor denied making 1,074

4

false claims and argued that anyone could have used the Noula email address; the presentence report failed to identify each fraudulent claim or to describe how he was connected to each claim; and another Noula employee submitted fraudulent claims without his knowledge. Third, Lindor argued that he was only an employee of Noula.

Lindor moved for a downward variance from his advisory guideline range. Lindor argued that he did not profit from his fraud because the donations to Noula aided people displaced by the oil spill and because there was no proof that he received a percentage of the disaster relief paid to the claimants. Lindor also argued that he was out of the office when some of the false claims were submitted.

The government presented evidence that Lindor was responsible for 430 fraudulent claims for disaster relief. Four persons testified that their personal identification information was used without their knowledge in fraudulent claims submitted by Noula. Robert Passero, a fraud analyst, testified about evaluating two years of payroll data corresponding to 430 client files found on Lindor's computer and creating spreadsheets that matched data in those files to fraudulent claims submitted to and paid by the Claims Facility. Passero testified that the client files had virtually identical supporting documents consisting of a "canned hardship letter, a canned verification of employment letter, . . . [and] copies of maps of the Gulf of Mexico and newspaper articles related to the oil spill"; that the names of

the employers and amounts of paystubs on the fraudulent claims matched the data on Lindor's computer; that some of the claimants names had been written on sign-in sheets found in Noula records; and that the fraudulent claims were all based on income lost from one of six companies, all of which denied employing any of the claimants. Passero explained that 80 of the claims sought approximately $2.4 million in losses; he extrapolated that amount to determine the loss attributable to other claims; and he eliminated some questionable claims, which resulted in a reduction of the loss amount from more than $14 million to $12,764,081. Passero also explained that some of the fraudulent claims had been submitted electronically using the internet protocol address assigned to Noula and that the trial testimony of a cohort proved that Lindor submitted other claims by connecting his computer to the internet at the cohort's apartment. To match data on fraudulent claims submitted before Lindor stored data on his computer, Passero matched payroll documents to the paystubs issued by Lindor's employer in 2009. Passero also compiled a list of checks written by Lindor on a Noula account to refund unsuccessful claimants, and between 20 and 25 percent of the checks were written for $300.

The district court overruled Lindor's objections. The district court found that the government proved by a preponderance of the evidence that Lindor intended to

6

cause a loss of more than $7 million. The district court also found that the 430 false claims resulted in a loss of $12,764,081.

The district court sentenced Lindor to 286 months of imprisonment based on his "history and characteristics"; the circumstances of his complex and "long-running scheme" that involved large amounts of people, claims, and money; the "significant . . . societal harm" caused by "divert[ing] [money] away from those it was intended to help"; and the need to "discourage others who" might engage in similar fraud. *See* 18 U.S.C. § 3553(a). The district court imposed concurrent sentences of 168 months for each of Lindor's mail and wire fraud offenses and sentenced him to 94 months for each count of access device fraud with instructions that those sentences run concurrently with each other and consecutively to the sentences for mail and wire fraud. The district court also sentenced Lindor to 24 months for each count of aggravated identity theft and ordered that those sentences run concurrently with each other and consecutively to his other sentences. According to the district court, it "imposed the top of the guideline range for [the] counts" of mail and wire fraud, "varied upward to impose a consecutive sentence" for the counts of access device fraud, and "imposed the mandatory consecutive sentence" for the counts of aggravated identity theft.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. We review for clear error a finding about the amount of loss. *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011). We review the reasonableness of a sentence under a deferential standard for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

## III. DISCUSSION

Lindor challenges his sentence on three grounds. First, he argues that the government failed to prove that he was responsible for 430 fraudulent claims and that the district court failed to make a reasonable estimate of the amount of loss. Second, Lindor argues that his sentence is procedurally unreasonable because the district court failed to give notice of or explain the reason for its upward variance. Third, Lindor argues that his sentence is substantively unreasonable because he was punished for "proceed[ing] to trial and testify[ing] on his own behalf." These arguments fail.

The district court did not clearly err in determining that Lindor intended to inflict a loss of more than $7 million. Lindor controlled Noula's operations and was responsible for all the false claims filed in furtherance of his scheme to defraud the Claims Facility. *See United States v. Rodriguez*, 751 F.3d 1244, 1256 (11th Cir.), *cert. denied*, 135 S. Ct. 310 (2014). Lindor counseled claimants and

submitted numerous fraudulent claims for disaster relief using employment documents and paystubs that he fabricated. At sentencing, Passero explained how he connected the client data stored on Lindor's computer to 430 fraudulent claims and how he calculated the amount of loss. Passero provided a spreadsheet that described each fraudulent claim for disaster unemployment relief, its amount, and whether the claim had been paid by the Claims Facility. Although Lindor was not indicted for all the fraudulent claims for disaster relief, the uncharged claims constituted relevant conduct, *see United States v. Hamaker*, 455 F.3d 1316, 1336 (11th Cir. 2006), and the district court could consider that conduct in making a reasonable estimate of the loss, U.S.S.G. § 2B1.1 cmt. n.3(C). Based on this reliable and specific evidence, the district court was entitled to find that Lindor was responsible for 430 fraudulent claims seeking $12,764,081 in disaster relief. *See United States v. Bradley*, 644 F.3d 1213, 1290–92 (11th Cir. 2011). The district court did not clearly err by enhancing Lindor's base offense level by 20 levels for intending to cause a loss between $7 million and $20 million. *See* U.S.S.G. § 2B1.1(b)(1)(K).

Lindor's sentence is procedurally reasonable. The district court "varied upward" by exercising its discretion to order that Lindor's multiple terms of imprisonment run consecutively, *see* 18 U.S.C. § 3584(a), and Lindor was not entitled to notice that he might receive consecutive sentences. *See Irizarry v.*

*United States*, 553 U.S. 708, 714–16, 128 S. Ct. 2198, 2202–04 (2008). And the district court complied with its duty to consider the statutory sentencing factors in determining whether to impose concurrent or consecutive sentences. *See id.* § 3584(b).

Lindor's sentence is also substantively reasonable. Lindor submitted hundreds of fraudulent claims for disaster relief to the Claims Facility with the intent to defraud British Petroleum of millions of dollars. Lindor also fraudulently obtained thousands of dollars in federal tax refunds and state unemployment benefits. Lindor argues that he was impermissibly punished for exercising his right to stand trial, but the district court explained that its sentence was intended to achieve the statutory purposes of sentencing. And the district court reasonably determined that a sentence of 286 months of imprisonment was required to address the extent of Lindor's fraud and the harm caused to the public by his diversion of disaster relief, to impose adequate punishment for his crimes, to affirm the public trust in assistance programs, and to deter similar future misconduct. *See* 18 U.S.C. § 3553(a). The district court did not abuse its discretion.

## IV. CONCLUSION

We **AFFIRM** Lindor's sentence.