[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10663
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-00027-LAG-TQL-17

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYANT PITTMAN,
a.k.a. John Gotti,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 30, 2021)

Before MARTIN, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Bryant Pittman appeals from his conviction and 200-month sentence for conspiracy to possess with intent to distribute a controlled substance. Pittman asserts three issues on appeal. First, he requests his guilty plea be vacated because he asserts the district court plainly erred in failing to ensure that he understood the nature of the charge against him and that his plea was supported by a sufficient factual basis. Second, he requests his judgment be corrected because he contends it did not accurately reflect the offense to which he pleaded guilty. Third, he seeks to preserve the sentencing issue of whether the district court plainly erred in treating his underlying conspiracy conviction as a career offender predicate.

We agree with Pittman that plain error review applies because he did not challenge or seek to withdraw his guilty plea in the district court, nor did he object to the description of the offense in the judgment.[1] *See United States v. Rodriguez,*

---

[1] We reject the Government's argument that we should apply the doctrine of invited error. *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (explaining where a party's statements or actions induce the district court into making an error, the invited error doctrine precludes us from reviewing even for plain error). The Government cites several unpublished cases in which we have held that:

> a defendant invited the alleged errors at his plea colloquy—of failing to ensure that he understood the nature of the charges against him and failing to ensure an adequate factual basis existed—when he (1) agreed at the plea colloquy that the elements of the offense were correctly stated and that the stipulated factual proffer provided a sufficient factual basis, and (2) failed to object to the basis of the conviction at the plea hearing or at sentencing.

*United States v. Chiddo*, 737 F. App'x 917, 921-22 (11th Cir. 2018) (citing *United States v. Peerani*, 576 F. App'x 949, 950 (11th Cir. 2014); *United States v. Daniels*, 225 F. App'x 795,

2

751 F.3d 1244, 1251 (11th Cir. 2014) (reviewing Federal Rule of Criminal Procedure 11 violations for plain error when a defendant does not object before the district court). The facts and procedure of this case are important in conducting our plain error review. Therefore, we recount the proceedings and facts of the indictment, plea, and sentencing in detail.

## I. BACKGROUND

In July 2018, Pittman was charged in Count One of a multi-count, multi-defendant indictment. Count One was labeled "Conspiracy to Possess with Intent to Distribute Methamphetamine" and charged multiple codefendants, including Pittman, with conspiring "to possess: a controlled substance, to wit: 1) methamphetamine in excess of fifty (50) grams; 2) cocaine in excess of 500 grams; 3) cocaine base in excess of 28 grams; and 4) marijuana with the intent to distribute," all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(B)(iii), (b)(1)(D), and 846.

### A. Plea

---

796 (11th Cir. 2007)). This case is distinguishable from *Chiddo*, *Peerani*, and *Daniels* because Pittman pleaded guilty to conspiracy to possess with intent distribute over 50 grams of methamphetamine only after being told that more evidence of the drug amount involved in the conspiracy would be forthcoming. Pittman could not have invited the error in this case as Pittman did not have the information during the plea hearing to invite the error—that is, he did not know that the Government would ultimately fail to present evidence of the conspiracy involving over 50 grams of methamphetamine at sentencing.

Pursuant to a plea agreement, Pittman agreed to plead guilty to Count One of the indictment. The plea agreement described Count One as charging "Conspiracy to Possess with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code Sections 841(a)(1) and 841(b)(1)(A)(viii)." The plea agreement stated Pittman understood his offense had a mandatory minimum sentence of ten years' imprisonment, a maximum possible sentence of life imprisonment, and a term of five years of supervised release. As part of the plea agreement, Pittman stipulated that a number of text messages, which law enforcement had obtained pursuant to search warrants, showed he was involved in the distribution of methamphetamine, marijuana, and cocaine as a part of a larger drug distribution operation run by Ricardo Bodiford. Pittman further stipulated he met with Bodiford on a number of occasions that roughly coincided with the times the messages were sent. The agreement included excerpts from text messages sent between Pittman and Bodiford between October and December 2017 that showed the two coordinating the sale of methamphetamine, cocaine, and marijuana. The text messages include references to "7 of [methamphetamine]" on two occasions, a "[b]all of [methamphetamine]" on three occasions, a "QP n gram" of cocaine, and an indeterminate amount of marijuana.

At the change-of-plea hearing, Pittman was placed under oath. Before beginning the colloquy, the district court confirmed Pittman understood that he

4

should let the court know if he did not understand any of the questions asked or if he needed time to speak with his attorney. When the district court asked Pittman if anyone had attempted to force, scare, or trick him into pleading guilty, the following exchange occurred:

Court: Has anyone attempted to force you, scare you, or trick you into pleading guilty?

Pittman: Well, no. I just feel like I've been pressured by this plea because I was asking my lawyer about my gram situation, and I was just trying to get a understanding, like, is I'm pleaing out to 50 gram? Because my texts equal to under 50 gram.

Court: So, and I'm sure your attorney—I'll give you an opportunity to talk to him a bit more. The government is going to lay out a statement of facts. And as I'll explain to you later on, if you go forward with the plea before the sentencing, I'm going to get a presentence report, which is going to include some evidence about your case. I will also get, possibly may get some other evidence about the case, and I will decide the drug amount based on that, what I find is part of the entire conspiracy that you're responsible for. And it can be more if the government establishes it, more than what's in this text amount. If they establish that you were involved in the conspiracy more than just what they have in the texts, then that's where I believe that number may be coming from, but I want you to talk to your . . . attorney for a bit more.

Government: Your Honor, I think that what Mr. Pittman is driving at is that as the plea agreement is currently drafted as he stands before the Court today, he would be admitting his participation in the conspiracy, which was responsible for the distribution of greater than 50 grams. And as set forth in the statement of facts, his personal participation in that, through the few text messages that we've put in, is somewhere around 25 to 28 grams total, as we calculate those orders that are set forth.

So I think his concern comes in more between the difference between the 25, 28 grams that's set out in his text messages and the 50 grams that the conspiracy itself or more would have been responsible for. And certainly he's free to clear that up, but I think that's more his issue than what the Court was addressing.

Court: And I guess I was trying to explain that you're being charged with conspiracy. So the conspiracy that you're charged with can, in fact—if the government establishes that the conspiracy is more than that 50, your text messages, you're not limited to what's in your text messages because you're not being charged with just your possession; you're being charged with the whole conspiracy. You understand that. And if you don't, you might need to talk to your attorney a bit more to have him flesh out what that means.

Pittman: So with all the grams, charged with all the grams in the conspiracy?

The court then suggested Pittman's counsel confer with Pittman. After they conferred, Pittman confirmed that he understood what his attorney had explained to him and did not have any further questions. Pittman also confirmed that no one attempted to force, scare, or trick him into pleading guilty. The following exchange then occurred:

Court: All right. And are you pleading guilty voluntarily and of your own free will because you have, in fact, committed the crime with which you've been charged?

Pittman: I'm going to get it over, yes, ma'am, because either way it go, I have to be pleading guilty here or later on down the line.

Court: Well, that is not the case. If you did not commit this crime, then you do not plead guilty, and I will not accept your guilty plea if you did not, in fact, commit the crime with which you're charged. So I can't just let you go ahead and get it over with. If you did not commit the crime, I cannot let you plead guilty to it.

6

Pittman:  Well, I ain't going to sit in here and waste your time or my time either, so I'm just going to go on and plead guilty, just—

Court:  All right.  Now, I'm going to ask you some questions, and you need to remember that you have promised to tell the truth.  So as we go on through this hearing and I ask you questions, you need to answer me truthfully, okay?

Pittman: Yes, ma'am.

Court:  All right.  Now, it's a plea to Count 1 of the indictment, correct:

Government:  Yes, your Honor.

Court:  Now, have you received a copy of the indictment against you?

Pittman:  Yes, ma'am.

Court:  All right.  And you understand that you're being charged with conspiracy to possess with the intent to distribute methamphetamine.

Pittman:  Yes, ma'am.

Court:  All right.  Do you have any questions about that charge at this time?

Pittman:  No ma'am.

The court then confirmed Pittman understood the rights he would be waiving by pleading guilty.  The Government set forth the elements of the charge against Pittman, stating it "would have to demonstrate beyond a reasonable doubt that the defendant knowingly and intentionally conspired or agreed with at least one other person . . . to possess with the intent to distribute methamphetamine and that the

7

conspirators were responsible for possessing and distributing more than 50 grams of methamphetamine." Pittman confirmed that he understood the elements of his offense as they had been recited by the Government. The Government recited the plea agreement's factual basis, which included the text messages from Bodiford that referenced "seven of [methamphetamine]" on two occasions and "ball of [methamphetamine]" on three occasions. Pittman confirmed the facts recited by the Government were correct and that he did commit the crime as described.

The district court confirmed that Pittman understood that, after the hearing, it would make findings of fact as to the amount of drugs involved in the conspiracy, which would not be limited to what he agreed to in the plea agreement and would determine the length to which he could legally be sentenced. The court also confirmed Pittman understood that it would "make those findings of fact not just based on what you agreed to in this plea agreement but on all the facts that I get." The court confirmed it could find he was responsible for a larger quantity than the "28 or 30 grams" that were set forth in his plea agreement, and if it did, he would not be able to withdraw his plea.

After Pittman confirmed he wished to plead guilty and was in fact guilty of the charged offense, the district court accepted his plea and adjudicated him guilty. At the conclusion of the hearing, the district court confirmed with Pittman that he did not have any questions about what happened at the hearing and confirmed with

8

Pittman's attorney there was nothing it should have covered and that Pittman's attorney had no objections.

## B. Sentencing

The probation officer prepared a PSI, which stated Pittman had pleaded guilty to conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 in combination with § 841(a)(1) and (b)(1)(A). The PSI recounted all the charges in the 33-count indictment. When describing Pittman's offense conduct, the PSI recounted the same text messages as in the plea, where Pittman requested 7 grams of methamphetamine on two occasions and a "ball", or 3.5 grams, of methamphetamine on three occasions.

In preparing the offense level computation, the PSI stated that "the calculations include, in the case of a jointly undertaken criminal activity . . . all acts and omissions of others that were within the scope of the jointly undertaken criminal activity; in furtherance of that criminal activity; and reasonably foreseeable in connection with that criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." The PSI then recounted that, based on Pittman's text messages with Bodiford, Pittman "requested a total of 24.5 grams of methamphetamine from Bodiford. Based on this, the defendant will be held accountable for 24.5 grams of methamphetamine

9

(actual).  The defendant was also involved in the distribution of cocaine and marijuana; however, these transactions are not included in the guideline calculation, as they would have no impact on the calculation of the Base Offense Level."

The PSI assigned a base offense level of 26 because Pittman's offense involved between 20 and 35 grams of methamphetamine (actual), pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(7).  Then, pursuant to § 4B1.1(b)(1), Pittman was deemed a career offender based on two prior convictions—a 2007 Georgia conviction for possession of cocaine with intent to distribute and a 2010 Georgia conviction for possession of marijuana with intent to distribute.  According to § 4B1.1(b), if the offense level for a career offender from the table listed under § 4B1.1 of the guidelines is greater than the offense level otherwise applicable, the offense level from the career offender section of the guideline applies.  Here, because Pittman qualified as a career offender, and because the statutory maximum penalty for the 50 grams or more of methamphetamine offense he pleaded guilty to was life, the applicable offense level was 37.  *See* 21 U.S.C. § 841(b)(1)(A); U.S.S.G. § 4B1.1(b).  After reducing Pittman's offense level by a total of 3 levels for his acceptance of responsibility, pursuant to § 3E1.1(a) and (b), the PSI arrived at a total offense level of 34.

10

Because of his career offender designation, his criminal history category was VI, pursuant to § 4B1.1(b). With a total offense level of 34 and a criminal history category of VI, Pittman's guideline imprisonment range was 262 to 327 months. The PSI noted that Pittman was subject to a minimum of ten years' imprisonment and a maximum of life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A).

The Government filed no objections to the PSI. Pittman lodged only one objection to the PSI. He objected to the imposition of two points on his criminal history score because he committed the instant offense while under a criminal justice sentence. U.S.S.G. § 4A1.1(d). Pittman did not believe he was on probation during the time he committed the instant offense.

In his sentencing memorandum, Pittman requested a 10-year statutory minimum sentence because of his minor role in the conspiracy and because his status as a career offender inflated his guideline range beyond what was necessary to serve the purposes of 18 U.S.C.§ 3553. His sentencing memorandum also contained letters from friends and family attesting to Pittman's character.

At the sentencing hearing, the district court stated it had reviewed the PSI, the objections that were filed, as well as the sentencing memorandum and letters filed on Pittman's behalf. Pittman stated that he had no questions about his PSI and then withdrew the one written objection to the PSI. The district court then adopted the PSI in whole and stated Pittman's guideline imprisonment range was

11

262 to 327 months, with an offense level of 34 and criminal history category of VI. When asked by the court if there were any objections to the guidelines as calculated, Pittman stated he would be asking the court to disregard the career offender status as a variance, but there were "no objections as to the actual mathematical calculations." The Government argued Pittman should be sentenced within his guideline range in light of his significant criminal history. Pittman requested a sentence at the statutory minimum of ten years' imprisonment. He argued that, although he qualified as a career offender, that designation did not accurately reflect his minor role in the conspiracy and the fact he was not actually making a living from selling drugs. In his allocution, Pittman took full responsibility for his actions and apologized for the harm that he had caused to his family.

The district court sentenced Pittman to a below-guidelines sentence of 200 months' imprisonment. It considered the extensive scope of the overall conspiracy even though Pittman's role in it was minor, Pittman's extensive criminal history, and the sentences that two of Pittman's co-conspirators had received. Pittman confirmed he had no objections to his sentence.

Pittman's written judgment stated that his conviction under Count One was for "Conspiracy to Possess with Intent to Distribute Marijuana and Cocaine," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

## II. DISCUSSION

Pittman argues his guilty plea should be vacated because the district court plainly erred in failing to ensure (A) that he understood the nature of the charge against him, and (B) that his plea was supported by a sufficient factual basis. First, he contends that he did not understand the nature of the charge against him because the record is ambiguous as to the amount of methamphetamine involved in his offense—which included the amount as an element because it increased the penalty that he was subject to—and the Government never proved that his offense involved 50 grams or more of methamphetamine as charged by the indictment. Second, he contends that his plea was not supported by an adequate factual basis because the Government never proved his offense involved 50 grams or more of methamphetamine.

As an initial matter, Pittman's plea agreement contained a sentence appeal waiver; however the "appeal waiver does not bar [Pittman's] Rule 11 claim that there is an insufficient factual basis to support a guilty plea." *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015). As stated above, plain error review applies because he did not challenge or seek to withdraw his guilty plea in the district court, nor did he object to the description of the offense in the judgment. *See Rodriguez*, 751 F.3d at 1251. To show plain error, a party must show that there was (1) an error, (2) that was plain, and (3) the error affected his

substantial rights. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007).

We may then review the otherwise waived error if it "seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *Id.* An error is "plain" if it

is "obvious and clear under current law." *United States v. Johnson*, 981 F.3d 1171,

1179 (11th Cir. 2020) (quotations omitted). On plain-error review, we may review

the whole record when considering the effect of any error on substantial rights.

*United States v. Monroe*, 353 F.3d 1346, 1350 (11th Cir. 2003).

Two provisions of Rule 11 are relevant to this appeal. First, Rule

11(b)(1)(G) requires the district court to ensure that a defendant understands "the

nature of the charge to which [he] is pleading." Fed. R. Crim. P. 11(b)(1)(G).

Second, Rule 11(b)(3) directs the district court, "[b]efore entering judgment on a

guilty plea," to "determine that there is a factual basis for the plea." Fed. R. Crim.

P. 11(b)(3).

## A. Understanding the Nature of Charges Against Him

The change-of-plea hearing does not evidence plain error as to Pittman's

understanding of the nature of the charge against him. *See United States v.*

*Presendieu*, 880 F.3d 1228, 1238-39 (11th Cir. 2018) (explaining whether the

district court has complied with ensuring the defendant understands the nature of

the charges against him depends on a variety of factors, including the complexity

of the offense and the defendant's sophistication and intelligence). The district

court ascertained Pittman had completed the eleventh grade and could read and write English. Pittman confirmed he had never been treated for a mental illness, was not actively using drugs, was not taking any medication, was not under the influence of drugs or alcohol, and had a clear mind. He confirmed he had received a copy of his indictment, understood he was being charged with conspiracy to possess with intent to distribute methamphetamine, and did not have any questions about the charge.

When Pittman expressed uncertainty as to whether he was pleading guilty to an offense involving 50 grams or more of methamphetamine when his text messages showed fewer than 50 grams, the district court explained that the PSI would include evidence about the offense, and that she would decide the drug amount based on the evidence presented by the Government. Specifically, the district judge stated, "[i]f they establish that you were involved in the conspiracy more than just what they have in the texts, then that's where I believe [the 50 grams] may be coming from." After the Government further explained the discrepancy between the amount in Pittman's text messages and the over 50 grams involved in the conspiracy, the district court reiterated, "if the government establishes that the conspiracy is more than that 50, your text messages, you're not limited to what's in your text messages because you're not being charged with just your possession; you're being charged with the whole conspiracy." The district

court then recommended Pittman discuss the issue with his attorney and gave Pittman time to do so. After Pittman and his attorney had a discussion, Pittman confirmed that he understood what his attorney explained to him and that he had no further questions.

Pittman confirmed later in the hearing that he understood the elements of the charge after the Government recited them, including that the offense involved 50 grams or more of methamphetamine. *United States v. Castro*, 736 F.3d 1308, 1314 (11th Cir. 2013) (stating there is a strong presumption that the statements made during a plea colloquy are true). He confirmed the factual basis contained in the plea agreement and recited at the hearing was true and correct and that he had in fact committed the offense that the facts described. Pittman also confirmed the plea agreement accurately reflected the understanding he had with the Government.

Our review of the plea colloquy convinces us that the district court thoroughly explained the charge and ensured Pittman understood he was pleading guilty to the total amount involved in the conspiracy, and not just to the amount Pittman possessed. The district court committed no error, much less plain error, in ensuring that Pittman understood the nature of the charges against him. *See* Fed. R. Crim. P. 11(b)(1)(G).

B. *Factual Basis for Plea*

16

"A factual basis for the plea simply means that there must be evidence from which a court could reasonably find that the defendant was guilty, and uncontroverted evidence of guilt is not required." *Rodriguez*, 751 F.3d at 1255 (quotations omitted). "The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty." *United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005). Under 21 U.S.C. §§ 841(a)(1) and 846, it is unlawful to conspire to possess with intent to distribute a controlled substance, which includes methamphetamine. 21 U.S.C. §§ 812, 841(a)(1), 846. Section 841(b) outlines the penalties applicable to §§ 841(a) and 846, some of which are based on the type and quantity of the controlled substance involved in the offense. *Id.* § 841(b); *United States v. Achey*, 943 F.3d 909, 913 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2554 (2020). An offense involving 50 grams or more of methamphetamine carries a minimum of 10 years' imprisonment and maximum of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii). An offense involving 5 grams or more of methamphetamine carries a minimum of 5 years' imprisonment and maximum of 40 years' imprisonment. *Id.* § 841(b)(1)(B)(viii).

Under *Alleyne v. United States*, 570 U.S. 99, 103 (2013), "any fact that increases the mandatory minimum sentence for a crime must be admitted by a defendant or be submitted to a jury and found beyond a reasonable doubt." *United*

*States v. Payne*, 763 F.3d 1301, 1304 (11th Cir. 2014). In the context of a guilty plea, this element may be established when a defendant admits the facts in question. *See United States v. Booker*, 543 U.S. 220, 224 (2005).

There was no evidence contained in the plea agreement or submitted at the plea colloquy to support that the conspiracy involved over 50 grams of methamphetamine. Pittman admitted the facts in the stipulation in the plea agreement. The stipulation, however, did not support a finding that Pittman's offense involved more than 50 grams of methamphetamine. The stipulation supported only 24.5 grams of methamphetamine. The 24.5 grams supported by the stipulation has a statutory minimum of 5 years' imprisonment, while the more than 50 grams to which Pittman pleaded guilty has a statutory minimum of 10 years' imprisonment. Thus, the drug quantity of over 50 grams was an element of Pittman's offense because the drug quantity increased his mandatory minimum sentence. *See Alleyne*, 570 U.S. at 103; 21 U.S.C. § 841(b)(1)(A)(viii); (b)(1)(B)(viii).

While the Government argues that Pittman's plea of guilty to conspiracy to possess with intent to distribute over 50 grams of methamphetamine should settle the issue and be a sufficient factual basis, Pittman entered that plea with the understanding that more evidence of the methamphetamine involved in the conspiracy would be submitted. Pittman never agreed that the stipulated factual

proffer of 24.5 grams provided a sufficient factual basis for his offense of over 50 grams. Instead, Pittman first agreed that he understood the elements of the offense—that "the government would have to demonstrate beyond a reasonable doubt that the defendant knowingly and intentionally conspired or agreed with at least one other person, such as here, Ricardo Bodiford, to possess with the intent to distribute methamphetamine and that the conspirators were responsible for possessing and distributing more than 50 grams of methamphetamine." Next, the Government read into the record the stipulation of facts in the plea agreement—the stipulation to 24.5 grams of methamphetamine. Pittman agreed that the facts as the Government stated them were "true and correct," and that he did, in fact, commit the crime as described.

The court then noted that it would get information about the case after the plea hearing, and would "make findings of fact as to the amount of drugs in the conspiracy, and I will make findings about what amount of that can be—you can legally be sentenced for." Pittman stated he understood. The court stated it would "make those findings of fact not just based on what you agreed to in this plea agreement but on all the facts that I get." Pittman again stated he understood. The court explained, "you understand that if it turns out that I make a finding that you were responsible or the conspiracy, under the conspiracy you're legally responsible for more than 28 or 30 grams that is set forth in this plea agreement, I'm going to

19

sentence you based on that." Pittman stated he understood. After these explanations, Pittman pleaded guilty.

The only time that a drug quantity of over 50 grams of methamphetamine was mentioned in the PSI was in a description of the charge in the indictment. The PSI accounted for 24.5 grams of methamphetamine in the text messages, and there was no further evidence in the PSI as to drug amount. The Government also put forth no evidence during the sentencing hearing as to the drug amount involved in the conspiracy.[2]

There was no attempt by the Government to prove the conspiracy's drug distribution amount during the plea or sentencing, and the Government does not argue on appeal that it ever submitted evidence of the conspiracy involving over 50 grams of methamphetamine in Pittman's case. The district court plainly erred in determining there was a sufficient factual basis for Pittman's plea when the drug

---

[2] We note that Pittman did not bring the district court's attention to the fact that the Government failed to submit evidence of the drug quantity he pleaded to, by either submitting relevant objections to the PSI or mentioning the lack of evidence at the sentencing hearing. We considered whether this waived this issue on appeal. Although Pittman is alleging Rule 11 error rather than a sentencing error, we consider our sentencing waiver law to the extent it is applicable. Under our case law, the failure to object to allegations in a PSI means a defendant admits those facts for sentencing purposes. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Here, Pittman could not have admitted to over 50 grams in the PSI by failing to object because evidence that the conspiracy involved over 50 grams was not contained in the PSI. In any event, in the sentencing context, we review only for plain error objections not made during sentencing. *See United States v. Carpenter*, 803 F.3d 1224, 1238 (11th Cir. 2015). Thus, plain error review applies regardless.

quantity of over 50 grams of methamphetamine was never proven at the plea or sentencing.[3] *See Frye*, 402 F.3d at 1128.

In order for a defendant to show that a district court's plain error in accepting his guilty plea affected his substantial rights for the third prong of plain error review, he must show a reasonable probability that, but for the error, he would not have entered the plea. *United States v. Dominguez Benitez*, 542 U.S. 74, 82-83 (2004). A defendant cannot make such a showing where it is equally as likely that the error had no effect on his decision. *Castro*, 736 F.3d at 1314. In evaluating whether a Rule 11 error has substantially affected a defendant's rights, we have examined Rule 11's three "core principles," which are ensuring that: (1) the guilty plea is free of coercion, (2) the defendant understands the nature of the charges against him, and (3) the defendant understands the direct consequences of the guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

---

[3] Pittman contends other flaws in the documentation and proceedings contributed to plain error, including: (1) the indictment was ambiguous as to whether he was charged with possession of methamphetamine or possession with intent to distribute methamphetamine; (2) his plea agreement did not mention 50 grams of methamphetamine apart from citing the statutory penalty provision applicable to that amount; and (3) the judgment stated his conviction was for a conspiracy involving marijuana and cocaine and cited the penalty provision for an unspecified quantity of drugs. We find no merit to the first two arguments. As to the third, the mistake in the judgment was a clerical error. *See United States v. Portillo*, 363 F.3d 1161, 1165 (11th Cir. 2004) (explaining clerical errors are "minor and mechanical in nature"); *United States v. James*, 642 F.3d 1333, 1343 (11th Cir. 2011) (holding the incorrectly stated convicted offense in the judgment was a clerical error). This clerical error does not carry any weight in our plain error analysis.

Pittman contends that, although he stated during the change-of-plea hearing that he wanted to get his plea out of the way and would be pleading guilty one way or the other, there is a reasonable probability that he would not have pleaded guilty but for the errors because they resulted in an increased career offender offense level. Specifically, he asserts he faced a higher career offender offense level based on 50 grams or more of methamphetamine than he would have based on 5 grams or more. He asserts that a reasonable probability exists where a defendant is sentenced under an incorrect guideline range regardless of whether his sentence ultimately falls within the correct range, as in his case. He contends this Court should exercise its discretion to correct the error because it subjected him to the possibility of additional jail time.

This third-prong-plain-error inquiry requires determining whether Pittman would have pleaded guilty if he had known that the Government would not have put forth sufficient facts by the time of sentencing to show that his offense involved more than 50 grams of methamphetamine. As to Pittman's statements during the plea colloquy that he wanted to get the plea out of the way and that he would be pleading guilty one way or the other, those statements were made after it had been explained to Pittman that there would be more evidence of the drug quantity at sentencing. Thus, those statements cannot be considered apart from the consideration that other evidence was supposed to be submitted.

22

Pittman is correct that the quantity of methamphetamine controlled his career offender offense level, which is relevant for his understanding of the consequences of his guilty plea. *See Moriarty*, 429 F.3d at 1019. If a defendant is classified as a career offender pursuant to U.S.S.G. § 4B1.1, his offense level is determined by the "Offense Statutory Maximum." U.S.S.G § 4B1.1(b). "Offense statutory maximum" means "the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record," such as in 21 U.S.C. § 841(b)(1)(A)-(D). *Id.*, § 4B1.1, comment. (n.2). Specifically, Pittman's offense level becomes 37 if the offense statutory maximum is life imprisonment or 34 if the offense statutory maximum is 25 years or more. *Id.*

Thus, in Pittman's case, because he pleaded guilty to an offense with a statutory maximum of life imprisonment, once three levels were deducted for acceptance of responsibility, his total offense level was 34. If Pittman would have pleaded guilty to the offense supported by evidence from the factual stipulation and PSI, once three levels were deducted, his total offense level would have been 31. With a criminal history category of VI and a total offense level of 34, Pittman's guideline range found at sentencing was 262 to 327 months'

23

imprisonment. However, with a criminal history category of VI and a total offense level of 31, his guideline range based on the facts in evidence would have been 188 to 235 months' imprisonment.

Pittman's sentence imposed after the district court varied downward from the 262 to 327-month guideline range was 200 months. Pittman's actual sentence of 200 months' imprisonment is within the guidelines range supported by the record evidence—188 to 235 months' imprisonment. The Supreme Court has recognized that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

Even though Pittman's ultimate sentence falls within the guidelines range supported by the evidence presented, Pittman has shown a reasonable probability of a different result absent the plain error of accepting Pittman's plea without a sufficient factual basis. *See United States v. Bankson*, 945 F.3d 1316, 1319-20 (11th Cir. 2019) (determining that a defendant's substantial rights were affected where he was sentenced to 130 months' imprisonment, the low end of his incorrectly calculated guideline range, and his correct guideline range was 100 to 137 months' imprisonment). Pittman's conviction under § 841(b)(1)(A) based on

24

an insufficient factual basis directly affected the penalty he was subject to. *See*

*Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908-09 (2018) (explaining a

plain guidelines range error that affects a defendant's substantial rights generally

satisfies the final discretionary prong of plain error review). Thus, we conclude

Pittman has satisfied all four prongs of plain error review.

### III.  CONCLUSION

We vacate Pittman's conviction and remand with instructions to allow

Pittman to withdraw his guilty plea. Because of our resolution of the plea issue,

we need not remand for correction of the clerical error in the judgment.[4]

**VACATED AND REMANDED.**

---

[4] Pittman also contends the district court erred in treating his underlying drug conspiracy conviction as a career offender predicate. Pittman concedes that he did not object on this basis at sentencing and, assuming his sentencing appeal waiver does not apply, his challenge would be for plain error. He also concedes that neither this Court nor the Supreme Court has resolved the issue of whether 21 U.S.C. § 846 criminalizes a broader range of conduct than that covered by a generic conspiracy, and he seeks solely to preserve the issue. Because we are vacating Pittman's conviction, we need not reach this sentencing issue.